UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| KEITH PURDY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 2:16-cv-00337-JMS-DLP ) |
| ARAMARK LLC, ARAMARK FOOD SERVICES, JASON ENGLISH, | ) ) ) ) |
| Defendants. | ) ) |

**Entry Granting Defendants' Unopposed Motion for Summary Judgment**

Keith Purdy, a former Indiana State prisoner, filed this civil action alleging that the Defendants, Aramark LLC, Aramark Food Services,[1] and Food Service Director Jason English, violated his Eighth Amendment rights. Specifically, Purdy alleges that while he was incarcerated at Putnamville Correctional Facility, Defendants provided him with an insufficient amount of low quality food. In addition, the dining hall was unsanitary because there were birds present and the fans did not work.

Defendants seek resolution of the claims alleged against them through summary judgment. For the reasons explained below, the unopposed motion for summary judgment, dkt. [30], is **granted.**

**I. Standard of Review**

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." *Fed. R. Civ. P.* 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty*

---

[1] The corporate defendants are both improperly named. Aramark Correctional Services, LLC, ("Aramark") is understood to be the proper corporate entity in this litigation. Given the fact that this action is subject to dismissal formal substitution is not required.

*Lobby, Inc.,* 477 U.S. 242, 248 (1986). The Court views the facts in the light most favorable to the non-moving party and all reasonable inferences are drawn in the non-movant's favor. *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011). "The applicable substantive law will dictate which facts are material." *National Soffit & Escutcheons, Inc., v. Superior Systems, Inc.,* 98 F.3d 262, 265 (7th Cir. 1996) (citing *Anderson,* 477 U.S. at 248).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325.

In this case, Defendants have met that burden through their unopposed motion for summary judgment. *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission."). By not responding to the motion for summary judgment, Purdy conceded to Defendants' version of the facts. *Brasic v. Heinemann's Inc.,* 121 F.3d 281, 286 (7th Cir. 1997). This is the result of Local Rule 56-1, of which Purdy was notified. See dkt. 29. This does not alter the standard for assessing a Rule 56 motion, but does "reduc[e] the pool" from which the facts and inferences relative to such a motion may be drawn. *Smith v. Severn,* 129 F.3d 419, 426 (7th Cir. 1997).

## II. Undisputed Facts

Aramark provides food service at the Putnamville Correctional Facility pursuant to a contract between Aramark and the Indiana Department of Corrections (IDOC).

The meals provided to the inmates at Putnamville Correctional Facility met, and continue to meet, the caloric and nutritional requirements for inmates and are adequate to maintain good health. The standard daily meals provide inmates with approximately 2500 calories per day. The menus are approved by a registered dietician to meet appropriate dietary and nutritional standards for adult males. They are also approved by IDOC and its medical professionals.

Jason English is currently employed by Aramark. He has previously been employed as the food services director at Putnamville Correctional Facility. As the former food services director for Aramark at Putnamville, English's job duties and responsibilities included overseeing the day to day operations of the kitchen. English did not make any personal decisions regarding the meals inmates are served.

The meals are prepared each day according to the menus using specific recipes provided by the dietician. The food is prepared by both Aramark employees and inmate workers. Each day an Aramark supervisor meets with the inmate workers and reviews the food preparation and service protocols. The food is then prepared and served to the inmates or placed on trays to be served to inmates who are in segregated or other housing. This general process is followed for breakfast, lunch, and dinner.

The food portions that are served to inmates are served according to the menus. These portions provide for the appropriate nutritional and dietary needs of the inmates. The food sizes are also measured in the production kitchen using specific tools that provide the correct portion

size. These tools are called "spoodles." The inmate workers are also instructed, before every meal, on how to use the spoodles and the specific amount of food to be served.

The trays, silverware, cookware, and kitchen cooking surfaces and areas used to prepare the food are also cleaned before and after every use. These surfaces and utensils are appropriately washed and disinfected before they are used again. Aramark uses a checklist and cleaning schedule to confirm these processes are completed. Inmate line workers perform these tasks under the supervision of Aramark workers.

When English worked at Putnamville Correctional Facility, he had general supervisory responsibilities over the cooking processes and cleaning processes in the kitchen. To his knowledge, appropriate cooking and cleaning procedures were used at every meal. He is not aware of any dangers presented to the inmates by any cooking or cleaning procedure.

The inmate workers also clean the dining room areas. This occurs during each meal and after each meal. Inmate workers are present during meals to sweep floors and wipe down tables. This cleaning also occurs after each meal.

There was a time when birds flew into the dining area. English believes that the birds had flown in through holes in the ceiling. Aramark had no control over this issue. This was a facilities issue for IDOC. Neither English nor any other Aramark employee at Putnamville Correctional Facility had the ability to change or alter the structure of the correctional facility, including fixing holes in the ceiling. IDOC later fixed openings in the ceiling through which the birds came in. If any bird droppings were found in the dining area they were cleaned and disinfected just like any other mess that is found the area. IDOC cleaning staff/sanitation workers also cleaned up after the birds.

English is not personally aware of any situation in which any birds or bird droppings presented an immediate health problem or concern for the inmates. These were temporary messes that were cleaned up. English is also not aware of any inmate trays that were served with bird droppings on them. But, if any food had any bird droppings in it, an inmate simply had to contact a correctional officer who could identify the problem and the inmate would receive a new food tray.

Additionally, English had no control over the temperature in the dining rooms. He is not aware of any Aramark employee who had any control over the temperature of the dining room. He does not control the fans in the dining room or their operations. He is not aware of any Aramark employee who controlled the fans in the dining room.

### III. Discussion

The constitutional provision pertinent to Purdy's claim is the Eighth Amendment's proscription against the imposition of cruel and unusual punishment. *Helling v. McKinney*, 509 U.S. 25, 31 (1993) ("It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."). The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *Farmer v. Brennan,* 114 S. Ct. 1970, 1976 (1994). A claim based on unconstitutional conditions of confinement must demonstrate two requirements: 1) an objectively serious condition, and 2) an official's deliberate indifference to that condition. "The conditions of imprisonment, whether of pretrial detainees or of convicted criminals, do not reach even the threshold of constitutional concern until a showing is made of 'genuine privations and hardship over an extended period of time.'" *Duran v. Elrod*, 760 F.2d 756 (7th Cir. 1985) (*quoting Bell v. Wolfish*, 441 U.S. 520, 542 (1979)). The second requirement is a subjective one:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 114 S. Ct. at 1979.

The undisputed record reflects that Purdy received meals that constitute a nutritionally adequate diet and that the food was prepared and served under conditions which did not present a danger to his health and well-being.

There is no evidence of a practice, policy, or custom that Aramark uses that results in providing inmates with inadequate meals. There is no evidence Aramark provided low quality, non-nutritional meals to save money. To the contrary, Aramark provides a registered dietician to assist in developing the meals for inmates, trains and instructs the inmate workers on how the meals are to be served, and serves the meals identified in the menus.

Defendants were not responsible for the holes in the dining room ceiling that allowed the birds to fly in. Instead Defendants had protocols in place to clean the dining area if bird droppings were found and cleaned the dining area and food preparation equipment regularly. Nor were Defendants responsible for the temperature of the dining hall or the broken fans.

Purdy has not shown that he has suffered any damages or harm as a result of any action taken by Defendants.

Under these circumstances, Purdy's Eighth Amendment rights were not violated by Defendants. For this reason, Defendants are entitled to judgment as a matter of law.

### IV. Conclusion

It has been explained that "summary judgment serves as the ultimate screen to weed out truly insubstantial lawsuits prior to trial." *Crawford-El v. Britton,* 118 S.Ct. 1584, 1598 (1998).

This is a vital role in the management of court dockets, in the delivery of justice to individual litigants, and in meeting society's expectations that a system of justice operate effectively. Indeed, "it is a gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained," and in such cases, summary judgment is appropriate. *Mason v. Continental Illinois Nat'l Bank,* 704 F.2d 361, 367 (7th Cir. 1983).

Purdy has not identified a genuine issue of material fact as to his claims in this case and Defendants are entitled to judgment as a matter of law. Therefore, Defendants' Motion for Summary Judgment, dkt. [30], is **GRANTED.**

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 3/21/2018

_____
Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

KEITH PURDY
944551
5155 E. 65th Street
Indianapolis, IN 46220

Christopher Douglas Cody
HUME SMITH GEDDES GREEN & SIMMONS
ccody@humesmith.com